**ARNOLD & PORTER KAYE SCHOLER LLP**
S. Zachary Fayne (SBN 307288)
(zachary.fayne@arnoldporter.com)
David Barnes (SBN 318547)
(david.barnes@arnoldporter.com)
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111-4024
Tel: (415) 471-3100
Fax: (415) 471-3400

Jonathan S. Martel (*pro hac vice anticipated*)
(jonathan.martel@arnoldporter.com)
Ethan G. Shenkman (*pro hac vice anticipated*)
(ethan.shenkman@arnoldporter.com)
601 Massachusetts Ave., NW
Washington, D.C. 20001-3743
Tel: (202) 942-5000
Fax: (202) 942-5999

*Attorneys for Engine Manufacturers Association,
d/b/a Truck & Engine Manufacturers Association*

### UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENGINE MANUFACTURERS ASSOCIATION, d/b/a Truck & Engine Manufacturers Association, <br><br> Plaintiff, <br><br> v. <br><br> CALIFORNIA AIR RESOURCES BOARD; and RICHARD COREY, in his official capacity as Executive Officer of the California Air Resources Board, <br><br> Defendants. | Civil Action No. 2:22-cv-03663 <br><br> **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

COMPLAINT

Plaintiff Engine Manufacturers Association, d/b/a Truck & Engine Manufacturers Association ("EMA"), by and through its undersigned counsel, alleges as follows:

**PRELIMINARY STATEMENT**

1. The claim asserted in this Complaint solely involves a question of express federal law and preemption under the federal Clean Air Act ("CAA"). There are no relevant factual disputes.

2. On December 22, 2021, the California Air Resources Board officially adopted a package of revised emission standards, test procedures, and other emission-related requirements applicable to new heavy-duty engines and vehicles, referred to herein as the "Omnibus Regulations."

3. The Omnibus Regulations would require, among other things, that heavy-duty engine manufacturers develop and deploy new technology to reduce nitrogen oxide ("NOx") emissions initially by 75 percent and particulate emissions by 50 percent, demonstrate emissions compliance on entirely new test cycles, and ensure emissions compliance for certain "Class 3" heavy-duty engines using new durability test procedures out to an extended "useful life" range of 150,000 miles instead of 120,000 miles. The Omnibus Regulations would require engine manufacturers to redesign, test and build their engines to comply with all of those new requirements starting with Model Year ("MY") 2024, which begins—at the latest—on January 1, 2024. Thus, the Omnibus Regulations leave manufacturers with only *two years* of lead-time to comply. That limited lead-time period directly violates Congress's explicit command in the CAA that California must abide by the same *four-year* lead-time requirement that applies to federal emission standards adopted by the U.S. Environmental Protection Agency ("EPA") for new heavy-duty engines and vehicles. The Omnibus Regulations are therefore unlawful and preempted under federal law.

4. The CAA expressly preempts States from "adopt[ing] or attempt[ing] to

enforce any standard relating to the control of emissions from new motor vehicles or new motor vehicle engines." 42 U.S.C. § 7543(a). Congress provided for a potential preemption exemption for California, if California first qualifies for and obtains a preemption waiver from EPA. However, in providing for that limited exemption, Congress specified that California standards are ineligible for such a preemption waiver if they are not consistent with CAA Section 202(a), codified at 42 U.S.C. § 7521(a).

5. CAA Section 202(a) authorizes and governs EPA's adoption of federal emissions standards for all new motor vehicles and motor vehicle engines. CAA Section 202(a)(2) requires EPA to provide sufficient lead-time in the case of all such standards for developing and implementing the requisite emissions-control technology, considering costs. Separately, and of particular significance here, CAA Section 202(a)(3)(C) requires that any EPA standards applicable to new heavy-duty vehicles or engines may apply beginning no earlier than the model year commencing four years after the standards' promulgation.

6. Congress established the minimum four-year lead-time requirement for the emission standards that apply to new heavy-duty vehicles and engines to account for the unique nature of the heavy-duty industry, where production and sales volumes are much lower than for passenger cars and light-duty trucks, and where the heavy-duty engine manufacturing industry is not fully integrated with the heavy-duty vehicle manufacturing industry. In that regard, the manufacturers of heavy-duty truck engines and the manufacturers of heavy-duty trucks are not always the same entities. Accordingly, Congress determined that those heavy-duty manufacturers require more lead-time and more time between changes in emission standards—a minimum of four years of lead-time and three years of regulatory stability—not only to afford them time to develop, integrate and implement new emission-control technology, but also to ensure that they can recover their capital investments that enable the development of those technologies. Those Congressional objectives as

specifically tailored to the heavy-duty engine and vehicle industry apply equally to emission standards adopted by EPA or by California.

7. Because the Omnibus Regulations, which were officially adopted in December 2021, include new emission standards for new heavy-duty engines starting with MY 2024—a time period unequivocally less than four years—those standards are not consistent with the four-year lead-time requirement of CAA Section 202(a)(3)(C), and are therefore preempted.

8. Plaintiff EMA is the trade association that represents the world's leading manufacturers of heavy-duty engines and vehicles. EMA's members are and will continue to be adversely impacted by the Omnibus Regulations. EMA's members are being compelled now to take rapid steps to redesign, test, and certify their heavy-duty engines in order to try to comply with the multiple provisions of the Omnibus Regulations that apply starting in MY 2024. The efforts, costs, and burdens involved are significant. Plaintiff EMA and its members therefore urgently need relief from this Court to resolve this purely legal question under the federal CAA and the Supremacy Clause of the U.S. Constitution.

9. Accordingly, Plaintiff EMA brings this civil action for declaratory and injunctive relief, seeking (1) a declaration, pursuant to 28 U.S.C. § 2201, that the provisions of the Omnibus Regulations that would take effect starting in MY 2024 are expressly preempted by the CAA insofar as they would apply prior to MY 2026 and are not eligible for a waiver of preemption as a matter of law; and (2) a permanent injunction precluding the California Air Resources Board from enforcing or attempting to enforce any of the provisions of the Omnibus Regulations that would take effect starting in MY 2024 insofar as they would apply prior to MY 2026.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, which confers original jurisdiction on federal district courts over actions arising under the Constitution or laws of the United States.

11. The relief requested is authorized pursuant to 28 U.S.C. §§ 1651 (All Writs Act), 2201 (Declaratory Judgment Act), and 2202 (Further Relief), as well as 42 U.S.C. § 1983.

12. Venue is proper in the Central District of California pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claim occurred in this district and because the office of Defendants is located in this district.

## PARTIES

13. Plaintiff EMA is a not-for-profit trade association representing the leading manufacturers of heavy-duty motor vehicles and engines. EMA is organized under the laws of the State of Illinois, with its principal place of business in Chicago, Illinois. EMA members manufacture the heavy-duty engines and vehicles that will be subject to the exhaust emission standards and other emission-related requirements to be implemented under the Omnibus Regulations. EMA's members are thus subject to and will be adversely affected by the unlawful Omnibus Regulations. One of EMA's principal purposes is to represent the interests of its member companies in federal, state, and local regulatory proceedings, and, where necessary, to challenge regulations adopted by regulatory authorities, including the California Air Resources Board.

14. Defendant California Air Resources Board is a branch of the California Environmental Protection Agency and is the State board vested with authority under the California Health and Safety Code to adopt, implement, and enforce emission standards and other emission-related requirements for motor vehicles and motor vehicle engines. The California Air Resources Board is located in Sacramento and El Monte, California, and performs its duties throughout the State of California.

15. Defendant Richard Corey is the Executive Officer of the California Air Resources Board and its highest-ranking administrative officer. Mr. Corey is sued in his official capacity. He performs his official duties throughout the State of California.

16. Defendants California Air Resources Board and Executive Officer Corey are hereinafter referred to collectively as "CARB."

## STATUTORY BACKGROUND

17. Section 202(a) of the CAA authorizes EPA to prescribe by regulation "standards applicable to the emission of any air pollutant from any class or classes of new motor vehicles or new motor vehicle engines. . . ." 42 U.S.C. § 7521(a)(1).

18. Section 202(a) imposes several conditions on the promulgation of emission standards. First, pursuant to Section 202(a)(2), any regulation prescribed by EPA under Section 202(a)(1) "shall take effect after such period as [EPA] finds necessary to permit the development and application of the requisite technology, giving appropriate consideration to the cost of compliance within such period." 42 U.S.C. § 7521(a)(2).

19. Separately, pursuant to Section 202(a)(3)(C), any standard "applicable to classes or categories of heavy-duty vehicles or engines shall apply for a period of no less than 3 model years [the 'stability' requirement] beginning no earlier than the model year commencing 4 years after such revised standard is promulgated [the 'lead-time' requirement]." 42 U.S.C. § 7521(a)(3)(C).

20. For purposes of the Section 202(a) requirements, the CAA defines "heavy duty vehicle" to mean "a truck, bus, or other vehicle manufactured primarily for use on the public streets, roads, and highways . . . which has a gross vehicle weight . . . in excess of six thousand pounds." 42 U.S.C. § 7521(b)(3)(C).

21. For purposes of the Section 202(a) requirements, the CAA defines the term "model year," "with reference to any specific calendar year," to mean "the manufacturer's annual production period (as determined by [EPA]) which includes January 1 of such calendar year" or, if the manufacturer has no annual production period, "the calendar year." 42 U.S.C. § 7521(b)(3)(A)(i).

22. The CAA contains an express preemption clause—Section 209(a)—that states, in relevant part: "No state or any political subdivision thereof shall adopt or

attempt to enforce any standard relating to the control of emissions from new motor vehicles or new motor vehicle engines subject to this part." 42 U.S.C. § 7543(a).

23. CAA Section 209(b) provides a limited exception solely for California, pursuant to which EPA may waive preemption "if the State determines that the State standards will be, in the aggregate, at least as protective of public health and welfare as applicable Federal standards." 42 U.S.C. § 7543(b)(1).

24. However, CAA Section 209(b) goes on to provide that "[n]o such waiver shall be granted if [EPA] finds that—(A) the determination of the State is arbitrary and capricious, (B) such State does not need such State standards to meet compelling and extraordinary conditions, or (C) such State standards and accompanying enforcement procedures are not consistent with section 7521(a) [Section 202(a)] of this title." *Id.*

25. It is the subpart (C) requirement of Section 209(b) that is most directly at issue in this case.

## FACTUAL ALLEGATIONS

### A. CARB's Omnibus Regulations

26. On December 22, 2021, CARB officially adopted a series of exhaust emission standards and other emission-related requirements applicable to new MY 2024 and subsequent on-road medium- and heavy-duty engines and vehicles as those terms are defined under California law (the "Omnibus Regulations").

27. The Omnibus Regulations are codified in 13 Cal. Code Regs. §§ 2139.5 and 2169.1 through 2169.8; amendments to 13 Cal. Code Regs. §§ 1900, 1956.8, 1961.2, 1965, 1968.2, 1971.1, 1971.5, 2035, 2036, 2111, 2112, 2113, 2114, 2115, 2116, 2117, 2118, 2119, 2121, 2123, 2125, 2126, 2127, 2128, 2129, 2130, 2131, 2133, 2137, 2139, 2140, 2141, 2142, 2143, 2144, 2145, 2146, 2147, 2148, 2149, 2166, 2166.1, 2167, 2168, 2169, 2170, 2423, and 2485; and amendments to 17 Cal. Code Regs. §§ 95662 and 95663. The Omnibus Regulations also include revisions to the "California Exhaust Emission Standards and Test Procedures for 2004 and

1 Subsequent Model Heavy-Duty Diesel Engines and Vehicles" (Amended Sept. 9, 2021) (hereinafter "Heavy-Duty Test Procedures"), which are incorporated by reference in 13 Cal. Code Regs. § 1956.8(b).

28. CARB classifies vehicles with a gross vehicle weight rating ("GVWR") from 8,501 to 14,000 pounds as medium-duty vehicles, and vehicles with a GVWR of 14,001 pounds or greater as heavy-duty vehicles. 13 Cal. Code Regs. §§ 1900(b)(6), (13). A medium-duty engine is an engine used to propel a medium-duty vehicle, and a heavy-duty engine is an engine used to propel a heavy-duty vehicle. *See, e.g.*, *id.* § 1900(b)(5).

29. The medium- and heavy-duty engines and vehicles covered by the Omnibus Regulations, as classified by CARB, are heavy-duty engines and vehicles, respectively, within the meaning of CAA Sections 202(a)(3)(C) and 202(b)(3)(C) (defining "heavy duty vehicle" as having a gross vehicle weight under EPA regulations in excess of 6,000 pounds). Those engines and vehicles are hereinafter referred to collectively as "Heavy-Duty Engines and Vehicles" and individually as "Heavy-Duty Engines" and "Heavy-Duty Vehicles," respectively.

30. The Omnibus Regulations impose numerous standards applicable to Heavy-Duty Engines and Vehicles beginning in MY 2024, less than four years after CARB finalized the Omnibus Regulations. Those requirements include, but are not limited to, the standards described in paragraphs 31 through 47 below.

31. The Omnibus Regulations establish more stringent emission standards for oxides of nitrogen ("NOx") and particulates ("PM") for new MY 2024 and subsequent Heavy-Duty Engines that are used in Heavy-Duty Vehicles.

32. Specifically, the Omnibus Regulations establish a NOx emission standard of 0.050 grams per brake-horsepower-hour ("g/bhp-hr") for MY 2024 through 2026 Heavy-Duty Engines, as measured using the heavy-duty transient Federal Test Procedure ("FTP") duty cycle and the Ramped Model Cycle ("RMC")

duty cycle.[1] *See* 13 Cal. Code Regs. § 1956.8(a)(2)(C)1. That revised NOx standard is 75 percent more stringent than CARB's preexisting NOx emission standard of 0.200 g/bhp-hr.

33. Likewise, the Omnibus Regulations establish a new PM emission standard of 0.005 g/bhp-hr for MY 2024 and subsequent MY Heavy-Duty Engines, as measured using the FTP and RMC test cycles.[2] *See* 13 Cal. Code Regs. § 1956.8(a)(2)(C)1. That revised standard is 50 percent more stringent than CARB's preexisting emission standard for PM for Heavy-Duty Engines of 0.010 g/bhp-hr.

34. The Omnibus Regulations also establish a new "low load" test cycle ("LLC") that is intended to reflect engine operations in low load and low speed urban driving operations. *See* Heavy-Duty Test Procedures § I.11.B.8; 13 Cal. Code Regs. § 1956.8(j)(15). For MY 2024 through 2026 diesel-cycle Heavy-Duty Engines, the Omnibus Regulations establish a new NOx emission standard of 0.200 g/bhp-hr and a new PM standard of 0.005 g/bhp-hr as measured over the new LLC test cycle. *See* 13 Cal. Code Regs. § 1956.8(a)(2)(C)1.

35. In addition, the Omnibus Regulations also establish new durability demonstration requirements for MY 2024 and subsequent Heavy-Duty Engines. In general, to certify an engine, manufacturers must demonstrate to CARB that their engines comply with applicable emission standards throughout specified periods of time or engine operation, referred to as the engine's regulatory "useful life." Traditionally, engine manufacturers have demonstrated engine durability either by aging the engine (in the field or on an engine dynamometer) to its full regulatory useful life or by aging the engine to a percentage of useful life and then extrapolating the emission level to full useful life.

36. The Omnibus Regulations make several changes to the durability

---

[1] For Otto-cycle engines, the NOx standard is measured over the FTP test cycle only.
[2] For Otto-cycle engines, the PM standard is measured over the FTP test cycle only.

- 8 -
COMPLAINT

demonstration requirements for MY 2024 and subsequent Heavy-Duty Engines, including:

    a.    extending the hours of service an engine must accumulate before an emissions test (the "break-in period") from 125 hours to 300 hours;

    b.    requiring manufacturers to use one of two standardized aging cycles for conducting durability demonstrations, whereas under preexisting law manufacturers are allowed to determine the form and extent of aging cycles, consistent with good engineering judgment, and have flexibility to propose and use customized aging cycles in conducting durability demonstration programs; and

    c.    extending the length of the durability demonstration program to the full useful life of the engine, whereas under preexisting law manufacturers typically use aging cycles that are intended to represent aging of the engine and aftertreatment system to approximately 35 to 50 percent of the applicable useful life and then extrapolate the durability emissions data to the full useful life.

*See* Heavy-Duty Test Procedures §§ I.26.B.

37. The Omnibus Regulations also extend the "useful life" period for MY 2024 and subsequent Heavy-Duty Engines used in "Class 3" Heavy-Duty Vehicles with GVWR from 10,001 to 14,000 pounds to 15 years or 150,000 miles, whichever occurs first. 13 Cal. Code Regs. § 2111(l)(18). The preexisting useful life for such engines under California law is 11 years or 120,000 miles, whichever occurs first. To seek certification for those engines for MY 2024, after completing all of the development efforts to design and manufacture the new emissions-control technology to comply with the new standards, manufacturers must demonstrate the durability of that new technology by running tests to show continued compliance throughout this extended useful life, which is inherently time-consuming and costly. Those extended durability demonstration efforts, as a practical matter, are required to start now.

38. The Omnibus Regulations also make changes to the emissions warranty information and reporting and corrective action procedures for MY 2024 and subsequent Heavy-Duty Engines.

39. Under existing law, manufacturers are required to track and report to CARB warranty claims for emission-related components. Preexisting California law requires manufacturers to submit an Emissions Warranty Information Report ("EWIR") once a component reaches an unscreened warranty claim rate of 1 percent or 25 claims, whichever is greater;[3] to submit a Field Information Report ("FIR") if the unscreened warranty claim rate is 4 percent or 50 claims, whichever is greater; and to file an Emissions Information Report ("EIR") if the screened warranty claim rate is 4 percent or 50 claims, whichever is greater. The Omnibus Regulations reduce those reporting thresholds for MY 2024 through 2026 Heavy-Duty Engines to 1 percent or 12 unscreened claims for EWIRs (13 Cal. Code Regs. § 2144(a)(4)); 4 percent or 25 unscreened claims for FIRs (13 Cal. Code Regs. §§ 2143, 2145(a)); and 4 percent or 25 screened warranty claims for EIRs (13 Cal. Code Regs. §§ 2143, 2146(a)(1)).

40. The Omnibus Regulations also change the procedure for corrective action for MY 2024 and subsequent Heavy-Duty Engines and Vehicles by specifying that corrective actions, including recalls, for defective emission control components are required based solely on whether the failure rates of emission-related components meet or exceed 4 percent or 25 failures. 13 Cal. Code Regs. § 2143.

41. The Omnibus Regulations also make changes to the in-use compliance requirements for Heavy-Duty Engines. Under current law, manufacturers are required periodically to screen, procure, and test diesel-cycle Heavy-Duty Engines used in Heavy-Duty Vehicles using portable emission measurement systems

---

[3] Unscreened warranty claims include all parts replaced during an emissions warranty period for any reason, regardless of whether the part actually experienced a failure.

("PEMS") to assess the compliance of such engines with specified criteria, as measured using Not-to-Exceed ("NTE") test procedures. The current test procedure allows manufacturers to exclude certain test data from the evaluation of compliance, including test data generated under low engine power or extreme ambient temperatures and altitudes, as well as test data collected when engines fail to continuously operate within specified NTE control boundaries for thirty seconds or more.

42. The Omnibus Regulations establish new, more encompassing test procedures and in-use compliance criteria for MY 2024 and subsequent Heavy-Duty Engines used in Heavy-Duty Vehicles with a GVWR greater than 14,000 pounds, based on a new moving-average window ("MAW") and "binning" approach. *See* Heavy-Duty Test Procedures § 86.1370.B.6.

43. Under the new in-use testing requirements, manufacturers must measure and record exhaust emissions using a PEMS device. Those measurements are segregated into "windows." Each window is a specified period of time (300 consecutive seconds) during which the measured emissions are averaged. Those windows, which are overlapping, are then segregated into different "bins" based on the percentage engine-load corresponding to different engine operating modes (idle, low-load, and medium/high-load engine operations). The exhaust emissions reflected in each bin are then evaluated against new specified in-use emission standards.

44. The Omnibus Regulations also subject MY 2024 and subsequent Otto-cycle Heavy-Duty Engines used in Heavy-Duty Vehicles with a GVWR greater than 14,000 pounds to the PEMS-based heavy-duty in-use compliance program described above. Under preexisting California law, such engines are not subject to CARB's PEMS-based heavy-duty in-use compliance program.

45. The Omnibus Regulations also make changes to the idling requirements for Heavy-Duty Engines. Under preexisting California law, diesel-cycle Heavy-Duty Engines installed in Heavy-Duty Vehicles with a GVWR greater than 14,000 pounds

must be equipped with a system that automatically shuts down the engine after five minutes of continuous idle operation, or to be certified to a NOx idling emission standard of 30 grams per hour. Certain engines are exempt from those requirements, including those produced for use in buses, recreational vehicles, medium-duty vehicles, military tactical vehicles, authorized emergency vehicles, armored cars, and workover rigs.

46. The Omnibus Regulations establish a new NOx idling emission standard of 10 grams per hour for MY 2024 through 2026 engines, which is more stringent than the current optional NOx idling emission standard of 30 grams per hour. 13 Cal. Code Regs. § 1956.8(a)(6)(C)1.b.

47. The Omnibus Regulations also eliminate the preexisting exemptions for Heavy-Duty Engines used in buses, recreational vehicles, medium-duty vehicles, armored cars, and workover rigs starting in MY 2024, thereby subjecting engines used in those vehicles to more stringent emission standards. 13 Cal. Code Regs. § 1956.8(a)(6)(B).

48. The multiple new requirements established by the Omnibus Regulations as described in paragraphs 31 through 47 constitute standards applicable to heavy-duty vehicles or engines within the meaning of CAA Section 202(a)(3)(C).

49. CARB officially adopted each of the requirements described in paragraphs 31 through 47 in December 2021, and will apply and enforce them beginning in MY 2024—less than four years after adoption—in direct conflict with the requirements in CAA Section 202(a)(3)(C), 42 U.S.C. § 7521(a)(3)(C).

**B.    CARB's Promulgation of the Omnibus Regulation**

50. CARB first proposed to adopt the Omnibus Regulations and issued an Initial Statement of Reasons ("ISOR") in June 2020.

51. Numerous interested stakeholders, including EMA, submitted comments on the proposed Omnibus Regulations. Among other comments, EMA and others commented that CARB's adoption of the Omnibus Regulations would be unlawful

because it would violate the four-year lead-time requirement in Section 202(a)(3)(C) of the CAA, 42 U.S.C. § 7521(a)(3)(C), as applicable to CARB's Regulations through the waiver provisions in CAA Section 209(b)(1)(C), 42 U.S.C. § 7543(b)(1)(C).

52. Following a public hearing, CARB approved the adoption of the Omnibus Regulations by Executive Order dated September 9, 2021.

53. In its Final Statement of Reasons ("FSOR") for the Omnibus Regulations, CARB responded to the comments from interested stakeholders, including the comments that the Omnibus Regulations violate the four-year lead-time requirement in Section 202(a)(3)(C) of the CAA, 42 U.S.C. § 7521(a)(3)(C).

54. In its response to comments in the FSOR, CARB stated its position that the lead-time and stability requirements of Section 202(a)(3)(C) of the CAA do not apply to emission standards and other emission requirements in the Omnibus Regulations. CARB further stated its position that Section 202(a)(3)(C) "only applies to standards 'promulgated or revised under this paragraph [section 202(a) of the CAA],' that is, to standards promulgated by the Administrator of the U.S. EPA."

55. CARB submitted the final rulemaking package for the Omnibus Regulations to the California Office of Administrative Law ("OAL") on October 15, 2021.

56. The California OAL approved the Omnibus Regulations and filed them with the California Secretary of State on December 22, 2021, at which time the Regulations became final and operative under California law.

57. CARB submitted a preemption waiver request to EPA on January 31, 2022, requesting that EPA waive preemption with respect to the Omnibus Regulations pursuant to section 209(b) of the CAA, 42 U.S.C. § 7543(b).

58. As of the date of this filing, EPA has not acted on CARB's waiver request, and EPA has no statutory deadline to do so.

### C. Hardship to Manufacturers of Heavy-Duty Engines and Vehicles

59. The Omnibus Regulations' multiple requirements, including new emission standards, test procedures, and other emission-related requirements, are imposing and will continue to impose significant new burdens on the manufacturers of Heavy-Duty Engines and Vehicles, including EMA members.

60. The Omnibus Regulations require manufacturers to develop and implement new emission-control strategies to try to meet the lower emission standards and to ensure longer emissions-durability, all as assessed using more stringent and comprehensive emissions-testing requirements that take effect beginning MY 2024.

61. To the extent compliance with the Omnibus Regulations is feasible at all, manufacturers of Heavy-Duty Engines and Vehicles, including EMA members, are being compelled to spend substantial resources now in order to plan for and try to obtain CARB certification for new Heavy-Duty Engines that can be sold in California in MY 2024.

## CAUSES OF ACTION

### COUNT I
### (Express Preemption—Supremacy Clause)

62. Plaintiff reasserts and incorporates by reference herein Paragraphs 1 through 61.

63. The Supremacy Clause of the U.S. Constitution provides: "This Constitution, and the laws of the United States which shall be made in pursuance thereof; and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the Constitution or laws of any State to the contrary notwithstanding." U.S. Const. Art. VI.

64. The Omnibus Regulations are expressly preempted by Section 209(a) of the CAA, 42 U.S.C. § 7543(a), absent a waiver, because those regulations adopt

standards relating to the control of emissions from new motor vehicles or new motor vehicle engines.

65. Section 209(b) of the CAA provides that no waiver of preemption shall be granted if EPA finds that the State standards and accompanying enforcement procedures are not consistent with Section 202(a) of the CAA, 42 U.S.C. § 7521(a). *See* 42 U.S.C. § 7543(b)(1)(C).

66. The Omnibus Regulations do not qualify for a waiver of preemption under Section 209(b) of the CAA, 42 U.S.C. § 7543(b), as a matter of law, because the standards are not consistent with CAA Section 202(a), 42 U.S.C. § 7521(a). Specifically, the Omnibus Regulations require compliance with emission standards and accompanying enforcement procedures applicable to Heavy-Duty Engines and Vehicles beginning in MY 2024 and thus do not afford the required four years of lead-time as specified in CAA Section 202(a)(3)(C), 42 U.S.C. § 7521(a)(3)(C).

67. Plaintiff's members include manufacturers of Heavy-Duty Engines and Vehicles that have suffered and will continue to suffer substantial and irreparable harm if the Omnibus Regulations that would apply in MY 2024 or MY 2025 are not invalidated.

68. Plaintiff is therefore entitled to declaratory and injunctive relief pursuant to 28 U.S.C. § 2201, 42 U.S.C. § 1983, and other provisions of law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff EMA respectfully requests that the Court enter judgment in its favor and order the following relief:

1. Declare that the provisions of the Omnibus Regulations that would take effect starting in MY 2024 are invalid and unconstitutional under the Supremacy Clause of the U.S. Constitution insofar as they would apply prior to MY 2026, since those provisions do not afford four-years lead-time, and so are expressly preempted by Section 209(a) of the Clean Air Act, 42 U.S.C. § 7543(a), and are not eligible for a waiver of preemption under Section 209(b) of the Clean Air Act, 42 U.S.C.

§ 7543(b);

2. Permanently enjoin Defendant and its officers, employees, and agents from enforcing or attempting to enforce any provisions of the Omnibus Regulations that would apply in MY 2024 or MY 2025; and

3. Grant such other relief as may be just and proper.

Dated:  May 27, 2022                     Respectfully submitted,

ARNOLD & PORTER KAYE SCHOLER LLP


By: */s/ S. Zachary Fayne*
    S. Zachary Fayne
    Jonathan S. Martel
    Ethan G. Shenkman
    David Barnes

*Attorneys for Plaintiff Engine Manufacturers Association, d/b/a Truck & Engine Manufacturers Association*